NORTH CAROLINA AUTOMOBILE RATE ADMINISTRATIVE OFFICE, NA-
TIONWIDE MUTUAL INSURANCE COMPANY, ALLSTATE INSURANCE
COMPANY, TRAVELERS INDEMNITY COMPANY, THE AETNA
CASUALTY AND SURETY COMPANY, UNITED STATES FIRE IN-
SURANCE COMPANY, UNITED STATES FIDELITY AND GUARANTY
COMPANY, LUMBERMENS MUTUAL CASUALTY COMPANY, SAINT
PAUL FIRE AND MARINE INSURANCE COMPANY, SHELBY MUTUAL
INSURANCE COMPANY, AND AMERICAN MOTORISTS INSURANCE
COMPANY PETITIONERS v. JOHN RANDOLPH INGRAM, COMMISSIONER OF
INSURANCE FOR THE STATE OF NORTH CAROLINA, RESPONDENT

No. 7710SC73

(Filed 21 March 1978)

1. Insurance § 79.1— change in medical payment rates—order prohibiting use of
standard rule of application—jurisdiction of superior court

    The Superior Court of Wake County had subject matter jurisdiction under
G.S. 58-9.3(a) of a petition for review of an order of the Commissioner of In-
surance prohibiting the Automobile Rate Office from implementing reduced
automobile medical payments rates in accordance with its standard rule of ap-
plication of rate changes, and the Superior Court acted within the scope of its
powers in setting aside that order although it was included in an order approv-
ing a change in rates, as to which the Superior Court lacked subject matter
jurisdiction.

2. Insurance § 79.1— reduction in automobile medical payments rates—rule of ap-
plication—arbitrary order by Commissioner of Insurance

    The Commissioner of Insurance acted arbitrarily and in excess of his
statutory authority in entering an order prohibiting the Automobile Rate Of-
fice from implementing a reduction in automobile medical payments insurance
rates in accordance with its standard rule of application of rate changes where
he entered the order without prior notice, without hearing, and without sup-
porting evidence.

APPEAL by respondent Commissioner of Insurance from
*Smith (Donald L.), Judge.* Judgment entered 20 December 1976 in
Superior Court, WAKE County. Heard in the Court of Appeals 26
October 1977.

On 1 July 1971 the North Carolina Automobile Rate Ad-
ministrative Office (Rate Office) filed with former Commissioner
of Insurance Edwin S. Lanier a proposed revision of automobile
medical payments insurance rates for private passenger
automobiles reflecting a rate level decrease of 12.3%. The propos-
ed decrease was based on statistical data for 1968 and 1969 and
on the private passenger bodily injury liability insurance rates
then in effect. (Because of the similarity in hazard, medical
payments insurance premium rates are determined by reference
to bodily injury liability insurance rates, the medical payments in-

surance premium base rate being the sum of 10% of the base rate for bodily injury liability insurance plus a constant which is calculated in such a way that the total medical payments charges produce the required premium revenue.)

On 20 December 1972 the Rate Office filed a supplement to its 1 July 1971 Filing to reflect revisions which had been approved by Commissioner Lanier on 4 December 1972 in the private passenger automobile bodily injury liability rates upon which the medical payment insurance rates were determined. The supplemental filing proposed a rate level decrease of 14.4% instead of 12.3% and further proposed that the revised rates go into effect concurrently with the revised private passenger automobile rates which had been approved by Commissioner Lanier on 4 December 1972. No action was taken on the 1 July 1971 Filing or the 20 December 1972 supplement thereto by Commissioner Lanier, and these were still pending in the Department of Insurance when John R. Ingram took office as Commissioner of Insurance in January 1973.

During 1973 Commissioner Ingram took no action on the pending proposals by the Rate Office for decreases in rates for automobile medical payments insurance. On 18 January 1974, without notice or hearing, he issued an order approving effective 1 February 1974 the 12.3% rate level decrease as had been proposed in the original Rate Office Filing of 1 July 1971. In a letter to the Commissioner dated 22 January 1974, Mr. Paul L. Mize, General Manager of the Rate Office, called Commissioner Ingram's attention to the fact that, because automobile medical payments insurance rates are to some extent dependent upon automobile liability insurance rates and because the letter had been twice revised since the 1 July 1971 Filing had been submitted, implementing the revised medical payments rate tables on the basis of current bodily injury liability rates would have the effect of producing an overall rate level reduction of 16.4% in lieu of the 12.3% reduction indicated in the original 1971 filing. This letter also proposed the following rule of application for the new rates:

> The new medical payments rates for private passenger cars, for private passenger types rated under the Commercial Automobile Manual and for related miscellaneous

classifications will become effective February 1, 1974 in accordance with the following rule of application:

These changes are applicable to all new and renewal policies written on or after February 1, 1974 and to all policies written before February 1, 1974 which will become effective on or after April 1, 1974. No policy effective prior to February 1, 1974 shall be endorsed or cancelled and rewritten to take advantage of or to avoid the application of these changes except at the request of the insured and at the customary short rate changes as of the date of such request, but in no event prior to February 1, 1974.

EXCEPTION FOR EXPERIENCE RATED POLICIES. These changes are applicable as of the experience rating date to all policies to which an experience rating modification which becomes effective on or after April 1, 1974 is to apply and may not be applied to such policies prior to the experience rating date. As respects any policy to which an experience rating modification applies which becomes effective prior to April 1, 1974, these changes may not be applied until the first experience rating date after April 1, 1974.

The Commissioner replied with a letter dated 23 January 1974 notifying the Rate Office that the rate level reduction of 16.4% would be approved but that the rule of application was not acceptable. In accord with that letter the Commissioner issued an addendum to his 18 January order approving the 16.4% decrease and ordering into effect a rule of application different from the one submitted by the Rate Office. This addendum, dated 29 January 1974, ordered:

That the premium rates for automobile medical payments insurance shown in the Revised Rate Tables, reflecting an adjusted overall rate level reduction of 16.4% in place of the 12.4% (sic) shown in this filing, are approved effective February 1, 1974 and are to be applicable to all new and renewal policies effective on or after said date, except that any policy written before February 1, 1974, and effective on or after February 1, 1974, but effective before April 1, 1974, may be written at the medical payment insurance rates heretofore in effect, but only if a credit equal to the difference in the old rate and the new rate is given at renewal time; or if such policy is not renewed, only if a refund equal

to the difference in the old rate and the new rate is made when such policy is terminated.

On 1 February 1974 the Rate Office and certain member insurance companies filed their petition in the Superior Court in Wake County pursuant to G.S. 58-9.3 seeking reversal of Commissioner Ingram's orders of 23 January 1974 and 29 January 1974 insofar as they prohibited the Rate Office from implementing and placing into effect the reduction in automobile medical payments insurance rates in accordance with the standard rule of application maintained by the Rate Office. In connection with their petition, the petitioners moved for a temporary restraining order and for a preliminary injunction to enjoin Commissioner Ingram from enforcement of his orders of 23 January 1974 and 29 January 1974 with respect to the manner of implementation of the rate decrease and from taking any action to prevent the Rate Office from implementing such rate change in accordance with its standard rule of application.

Following issuance of a temporary restraining order on 1 February 1974, petitioners' motion for a preliminary injunction came on for hearing before Judge James H. Pou Bailey. After the hearing, Judge Bailey on 8 February 1974 issued a preliminary injunction pending final determination of this action enjoining the Commissioner from preventing the Rate Office from implementing and placing into effect the reduced automobile medical payments insurance rates in accordance with the standard rule of application as set forth in the letter of the Rate Office dated 22 January 1974. Following the issuance of this preliminary injunction, the Rate Office implemented and placed into effect the 16.4% rate reduction for medical payments insurance rates, effective 1 February 1974, in accordance with its standard rule of application as set out in its letter of 22 January 1974.

On 8 February 1974 respondent Commissioner filed his answer to the petition for review, a further answer and defense, and a motion to dismiss. On 9 July 1976 he filed a further motion to dismiss on grounds that the Superior Court of Wake County lacks subject matter jurisdiction. The case was heard before Judge Donald L. Smith at the 13 December 1976 Civil Session of Superior Court in Wake County, being heard on the pleadings, interrogatories, deposition, and the record in this matter.

The record shows the following: The rule of application submitted by the Rate Office was adopted by its Governing Committee in 1956 and has been the method of implementing insurance rate changes since that date. This rule of application is designed to minimize administrative and clerical work in implementing rate changes. It is common practice in the insurance industry for automobile insurance policies to be issued prior to their effective date. When a rate change is announced and becomes effective after a policy is issued but before the effective date of the policy, the question arises as to whether the policy must be altered to reflect the rate change or whether the policy can be put into effect as it was written. If a policy is issued no more than sixty days prior to its effective date, the standard rule of application generally eliminates the necessity of rewriting or reissuing the policy by permitting the policy to go into effect at its old rate unless the policyholder requests otherwise. This rule has the effect of protecting the policyholder from insurance rate increases occurring after the policy is issued if the policy is issued no more than sixty days prior to its effective date, but it permits the policyholder, if he so requests, to take advantage of rate decreases occurring after the policy is issued but before the policy's effective date. In the case of experience rated policies, the standard rule of application provides a time delay within which the policies may become effective without being subject to the rate change. This delay prevents the necessity of rerating risks or amending policies which have already been rated under experience rating modifications based on the existing rate level.

On the other hand, the rule of application which the Commissioner ordered into effect by his 29 January 1974 addendum to his 18 January 1974 order required the revised rate to apply to all policies which would become effective on or after the effective date of the rate change, regardless of when the policy was written or issued. The rate change in this case was a decrease, and if a policy was issued prior to the effective date of the rate change but written at the old rate, this rule would require the insurance companies to give the policyholder a credit at renewal time equal to the difference between the old and the new rates. If the policyholder did not renew the policy, the rule would require the insurer to make a refund when the policy was terminated.

Affidavits submitted by petitioners indicate that the cost of implementing the Commissioner's rule of application would exceed the amount of benefit to policyholders. The average rate decrease would be approximately one dollar for a six-month insurance policy and two dollars for a twelve-month policy. Renewal policies are normally prepared thirty to sixty days in advance of their effective date, and the rule of application ordered by the Commissioner would require insurance agents to review a substantial number of policies already issued in order to provide credits or refunds. Estimates of the administrative and clerical costs involved in making the refunds and credits ranged between $2.00 and $3.50 per policy.

Following the hearing, the court entered judgment making findings of fact and conclusions of law. Finding of Fact No. 4, to which no exception was noted, is as follows:

> 4. The rule of application set out in the Rate Office letter of January 22, 1974, is in accordance with the standard rule of application adopted by the Governing Committee of the Rate Office in June of 1956 which has been maintained and consistently used by the Rate Office in the implementation of automobile liability insurance rates including automobile liability medical payments insurance. It is common practice for policies of automobile liability insurance and medical payments insurance to be issued prior to the effective date of the policy. By providing a time interval within which policies written prior to the effective date of a rate revision may become effective after such date without the rate change being applicable to such policy, the standard rule of application eliminates the necessity for reissue or amendment to existing policies and the necessity of making premium adjustments to the policyholders for existing policies. In the case of experience rated policies, the standard rule of application prevents the necessity of rerating risks or amending policies which have already been rated under experience rating modifications based on the existing rate level.

The court concluded as matters of law that the Superior Court had jurisdiction of this case under G.S. 58-9.3; that issuance by the Commissioner of his order of 29 January 1974 changing the

rule maintained by the Rate Office for the implementation of changes in automobile insurance rates without notice, hearing, or any supporting evidence, was unlawful; and that to the extent the order would require petitioners to place the reduced rates into effect as to existing insurance policies entered into prior to 1 February 1974 to go into effect subsequent to that date, it contravenes Art. I, Sec. 19 of the State Constitution and the due process clause of the Fourteenth Amendment to the United States Constitution. On its findings of fact and conclusions of law the court adjudged that the Commissioner's order of 29 January 1974 be vacated insofar as it prohibits the Rate Office from implementing and placing into effect the reduction in automobile medical payments insurance rates in accordance with the standard rule of application maintained by the Rate Office.

From this judgment, the respondent Commissioner appealed.

*Allen, Steed and Allen, by Thomas W. Steed, Jr.; Broughton, Broughton, and Boxley, by Melville Broughton, Jr.; Sanford, Cannon, Adams & McCullough by Charles C. Meeker for petitioners appellees.*

*Attorney General Edmisten by Isham B. Hudson, Jr., Assistant Attorney General, for respondent appellant.*

PARKER, Judge.

[1] The initial question presented by this appeal is whether the Superior Court had subject matter jurisdiction of the petition for review under G.S. 58-9.3. We hold that it did. As pertinent to that question, G.S. 58-9.3(a) and G.S. 58-9.4 provide:

G.S. 58-9.3. *Court review of orders and decisions.* — (a) Any order or decision made, issued or executed by the Commissioner, except an order to make good an impairment of capital or surplus or a deficiency in the amount of admitted assets and except an order or decision that the premium rates charged or filed on all or any class of risks are excessive, inadequate, unreasonable, unfairly discriminatory or are otherwise not in the public interest or that a classification assignment is unwarranted, unreasonable, improper, unfairly discriminatory, or not in the public interest, shall be subject to review in the Superior Court of Wake County on

petition by any person aggrieved filed within 30 days from the date of the delivery of a copy of the order or decision made by the Commissioner upon such person.

G.S. 58-9.4. *Court review of rates and classification.* — Any order or decision of the Commissioner that the premium rates charged or filed on all or any class of risks are excessive, inadequate, unreasonable, unfairly discriminatory or are otherwise not in the public interest or that a classification or classification assignment is unwarranted, unreasonable, improper, unfairly discriminatory or not in the public interest may be appealed to the North Carolina Court of Appeals by any party aggrieved thereby.

Appellant Commissioner contends that the decision which petitioners sought to have reviewed in this case was one in which he found the premium rates charged for automobile medical payments insurance to be excessive and that therefore the Superior Court had no jurisdiction under G.S. 58-9.3(a) to review his decision, review of such an order being only by direct appeal to the Court of Appeals under G.S. 58-9.4. The fallacy in this contention lies in its major premise. Petitioners have never sought review of the portion of the Commissioner's order finding the rates excessive. Indeed, it was the petitioner Rate Office, not the Commissioner, which initiated the proceeding for the reduction in rates with its filing of 1 July 1971 proposing a rate level decrease of 12.3%. When, more than two and a half years later, the Commissioner approved the 12.3% decrease by his order issued 18 January 1974, it was the petitioner Rate Office which called his attention to the fact that, because of revisions which had occurred since the original filing in the private passenger automobile bodily injury liability rates to which the medical payments insurance rates were to some extent related, the rate level decrease in the medical payments insurance rates should be 16.4% rather than 12.3%. The Commissioner then issued an addendum to his 18 January 1974 order to approve the 16.4% decrease. The petitioners have never excepted to or in any manner sought to question the portion of the Commissioner's decision and order finding the premium rates excessive and approving the 16.4% decrease. Their only challenge has been to the portion of his order in which, without notice or hearing, he abruptly directed that petitioners could not follow in this case the standard

rule of application for placing into effect changes, whether increases or decreases, in insurance premium rates. That decision by the Commissioner is not such a decision as is described in G.S. 58-9.4, nor does it fall within any of the categories excepted from review by petition to the Superior Court in Wake County under G.S. 58-9.3(a). The argument in appellant's brief that the Commissioner's decision changing the rule of application should be "interpreted to mean that rates were excessive with respect to any and all policies bearing an effective date of February 1, 1974 or thereafter" is singularly unpersuasive in view of the Commissioner's long and unexplained delay in taking any action on the pending filing requesting approval of a decrease in rates. We hold that the Superior Court properly exercised subject matter jurisdiction under G.S. 58-9.3(a) in this case.

Appellant next contends that, even if the Superior Court had subject matter jurisdiction under G.S. 58-9.3 of the matters presented in the petition for review in this case, that statute did not give the Superior Court power "to modify the Commissioner's decisions by affirming in part and reversing in part." G.S. 58-9.3(c) provides that "[t]he trial judge shall have jurisdiction to affirm or to set aside the order or decision of the Commissioner and to restrain the enforcement thereof." In this case the trial court did set aside and restrain the enforcement of the only order or decision of the Commissioner which was brought before it for review, being the order or decision of the Commissioner that the petitioners could not in this case follow the standard rule of application for placing rate changes into effect. The order or decision would not have been reviewable by direct appeal to this Court under G.S. 58-9.4. *See Com'r of Insurance v. Insurance Co.*, 28 N.C. App. 7, 220 S.E. 2d 409 (1975). The Commissioner could not insulate it from any judicial review simply by including it in an order approving a change in rates, as to which the Superior Court would have lacked subject matter jurisdiction. We hold that the Superior Court acted within the scope of its powers as granted to it by G.S. 58-9.3.

[2] The question remains whether the Superior Court was correct in setting aside and restraining enforcement of the Commissioner's decision in which he attempted to change the standard rule of application in this case. We hold that it was and accordingly affirm.

The judgment of the Superior Court contains the following among the conclusions of law:

> There is no evidence in the record and, in fact, it is conceded by counsel for all parties, that the Commissioner's Order of January 29, 1974, was entered without notice or hearing or any supporting evidence whatsoever. The issuance of an order by the Commissioner changing or preventing application of the rule maintained by the Rate Office for the implementation of changes in automobile insurance rates without notice, hearing or any supporting evidence, is in excess of his statutory authority under Chapter 58 of the General Statutes and is unlawful.

The appellant filed an exception to this conclusion "except that part thereof which finds or concludes that the Commissioner afforded the petitioners no notice and hearing prior to the entry of the orders complained of." Appellant made this exception the basis of an assignment of error. However, appellant did not present or discuss this assignment of error or the exception on which it is based in his brief, and any question intended to be raised thereby is deemed abandoned. Rule 28(a), N.C. Rules of Appellate Procedure. In any event, the record before us fully supports the finding that the Commissioner's order in which he sought to prevent in this case the application of the long standing rule of the Rate Office for implementing changes in insurance premium rates was entered without prior notice, without hearing, and without supporting evidence. In so doing the Commissioner acted arbitrarily and in excess of his statutory authority. It should be noted that had the rate change been an increase rather than a decrease, the method of implementing the change which the Commissioner sought to impose in this case as compared with the standard rule of application adopted and maintained by the Rate Office would have worked to the detriment of policyholders to whom policies had been issued prior to 1 February 1974 to become effective on or after that date. The rate change here involved was a decrease rather than an increase, but even so, evidence submitted by the petitioners at the hearing in the Superior Court held prior to issuance of the preliminary injunction reveals that the benefits to individual policyholders which would result from application of the Commissioner's decision as compared with the results from application of the standard rule

would be minimal, while the cost to the petitioner insurance companies would be very substantial indeed, the total cost to the companies exceeding the total benefits to all affected policyholders by a wide margin. The Commissioner acted without receiving any evidence on these matters. Adoption of the rule which he sought to impose in the face of such evidence would have been arbitrary and capricious. It was all the more so because he acted without affording any interested party the opportunity to present such evidence.

Since we hold that the Commissioner in this case exceeded his statutory authority, we need not consider and do not pass upon the question, discussed in the briefs of the parties, of whether in addition he also violated constitutional rights of the appellees. For the reasons above noted the judgment of the Superior Court here appealed from is

Affirmed.

Judges BRITT and VAUGHN concur.